P. WEYBRICH & Co. v. J. C. HARRIS, *et al.*

1. BREACH OF WARRANTY — *Two Remedies.* Where personal property, such as a mowing or reaping machine, is sold with a warranty, and there is a breach of that warranty, the property sold not being as represented and warranted by the vendor, the purchaser has two remedies: (1) He may return the property and rescind the contract; or, (2) he may affirm the contract and sue for damages for the breach of warranty. In the latter case, he affirms the contract and the amount which then is *prima facie* due the vendor is not the reasonable value of the machine, but the contract price, and the only reduction is that which results from the breach of warranty.

2. ——— *Measure of Damages.* Where personal property such as a mowing or reaping machine is purchased, and the vendor knows nothing of the reasons of the purchase or the circumstances or condition of the purchaser, the measure of damages is the difference between the value of the article delivered in the condition it then was, and that of the article which in its perfect and complete condition the party intended to purchase. Any inability or delay in executing existing contracts amounts to nothing, unless the fact of such contracts was made known to the vendor.

3. GOOD FAITH, *Presumed; Bad Faith Requires Evidence.* Where the single question is whether the property delivered is, or is not that, or of the value of that contracted for, the good faith of the purchaser cannot be sustained by proof of conversations, which upon any other theory would be inadmissible as mere hearsay. Good faith is presumed, and need not be proved; only bad faith requires evidence.

*Error from McPherson District Court.*

ACTION by *P. Weybrich & Co.* against *J. C. Harris,* and the said Harris as administrator of the estate of A. W. Ulrich, deceased, to recover on two promissory notes. Trial at the April Term, 1883, and judgment for defendants for $161 and costs. The plaintiffs bring the case here. The opinion states the facts.

*G. W. Allison,* and *Clark & Tourney,* for plaintiffs in error.
*Webster & Dean,* for defendants in error.

The opinion of the court was delivered by

BREWER, J.: This was an action commenced by plaintiffs in error, plaintiffs below, on March 10, 1883, before a justice

of the peace, in McPherson county, to recover on two promissory notes executed by defendants. The case was tried before the justice, and from the judgment they appealed to the district court. At the April term, 1883, of that court, the case was tried before a jury; verdict and judgment were in favor of the defendants for $161 and costs. Of this judgment the plaintiffs in error complain.

The facts are that on June 9, 1880, the defendants purchased of plaintiffs through Puterbaugh Brothers, their agents at Newton, Kansas, a machine known as the Weybrich header. The contract entered into at this time as testified to by Harris, one of the defendants, was in substance this: Defendants were to take the machine out and set it up; if it didn't work right they were to notify plaintiffs, and they (plaintiffs) were to go out and fix it up, and to pay all the expense of fixing it; and if they failed to make it work, defendants were to return it to the plaintiffs' agent at Newton, Kansas; and plaintiffs were either to give them a new machine, or give up the notes; and as a part of this contract, plaintiffs warranted the machine to be made of good material and to do good work. This being a credit sale, defendants gave in consideration therefor their three promissory notes, all bearing date June 9, 1880, as follows: The first was for $87, due November 1, 1880; the second was for $87, due November 1, 1881; the third was for $86, due November 1, 1882. The first note was paid on or about maturity, and this action was on the last two notes. The defense was a breach of this warranty; that the machine which the purchasers received was not of the quality or as good as represented by the agent of the vendors.

It is a general proposition, that on a sale of a personal chattel with a warranty, in case the chattel turns out to be not of the kind or quality represented, the purchaser may have one of two remedies: he may rescind the contract and return the property. The effect of such action is to place the parties in the same condition in which they were before the purchase; and whatever has been paid or delivered by either

is to be returned, and it or its value may be recovered in an action therefor. This is one remedy. The other is: that the purchaser may affirm the contract, retain the property, and recover damages from the vendor for the breach of his warranty. These are the two and the only two remedies that the purchaser has under the circumstances. He may not set aside the express contract and have the courts create a new and implied one. He must either rest on the contract as made, or rescind and repudiate it. In the case at bar, as the purchasers retained the header and used it, not only during the seasons of 1880, but also during those of 1881 and 1882, they clearly abandoned the remedy by rescission of contract. A purchaser cannot retain and use property, and at the same time say he repudiates and rescinds the contract to purchase. The only remedy, therefore, the purchasers had in this case was to recover damages of the vendors, by reason of the breach of the warranty. This implies an affirmation of the contract as it was, and a *prima facie* liability for the contract price. The trial court in its instruction in two or three places ignored this rule, and charged the jury repeatedly that they were to credit the vendors with the actual value instead of the contract price, and then charge them for the damages resulting from the breach of the warranty. As there was testimony tending to show that the machine was of little value, the jury were obviously misled by this instruction. Obviously they gave the vendors, the plaintiffs, credit only for what they thought the machine was worth, instead of the price which the purchasers agreed to pay.

But as heretofore stated, if the contract is held good, if the plaintiffs are liable under such contract for a breach of the warranty, the contract is also good against the defendants, and they are liable for the contract price. It makes a material difference whether in the first instance the jury charged the defendants with $260, the cost price of the machine, or simply charged them with what they thought under the testimony, the machine was worth. Only for this and a subsequent error in the ruling of the court, can we understand

how it is that the jury returned such a verdict in favor of the defendants. That error — or possible error, we should say — is this; we are not clear as to the exact import of the testimony of one of the defendants, and therefore we say a *possible* error. Generally speaking, where personal property is sold which is not of the kind represented and warranted, the measure of damages is the difference between the contract price and the value of the article delivered. It is true that the measure of damages may sometimes be enhanced by proof that the property was purchased for a specific purpose, and that the sale was made by the vendor with the knowledge that it was intended for such specific purpose. In that case special damages may sometimes be recovered; but the general rule is, that before such special damages can be recovered it must be understood that the sale was made with respect to the specific purpose. If the vendor knows nothing of the contracts made by vendee, or the specific purpose for which the property is intended, and knows simply that the purchaser is seeking for an article of the kind and quality named, his liability is limited to the difference between the value of the article actually delivered and that of the article which the parties intended to purchase and contracted for. We state this as a general proposition, and in respect to the future trial of this case. We do not mean to affirm that the court erred, for we do not understand exactly what the parties intended by their testimony.

A third proposition, and the only one which we deem worthy of further notice, is in reference to the ruling of the court as to the admission of certain evidence. This evidence is as to the statements of certain parties, evidence which by ordinary rules it is conceded would be incompetent as mere hearsay. The trial court admitted it, because, as it said, it tended to prove good faith. We think the reason given is insufficient, and that as a general rule no testimony which upon the issues joined is clearly hearsay, can be received upon the mere supposition that it tends to prove good faith. In this case the error is material, for conversations with the

agent of the plaintiffs, and statements to and by him, are admitted at second hand — not upon the theory that they prove such conversations and statements, but upon the idea that they prove good faith. Yet, naturally and unavoidably the jury regard them as statements of the plaintiff's agent, in which respect they are clearly inadmissible. We only mention this matter for guide in the future trial of this case. Unquestionably the judgment is wrong. The plaintiffs knew not of the purpose of the defendants in purchasing, knew little or nothing as to the existing contracts of the defendants, and to say that they must donate the machine, and pay the defendants for the privilege of donating it, is an outrage on substantial justice.

The judgment will be reversed, and the case remanded for a new trial.

All the Justices concurring.