No. 25,011.

W. L. Holt, *Appellant*, v. Don Richardson and Arthur Tarbet, *Appellees*.

SYLLABUS BY THE COURT.

SALE—*Stock of Merchandise—False Representations—Warranty of Unencumbered Title—Buyer's Right of Rescission*. A seller made a bulk sale of a stock of merchandise. He falsely represented that the goods were free of liability for debt, and the representation was carried into the bill of sale in the form of a warranty. The buyers were induced to purchase by the representation, and relied on the warranty. *Held*, the buyers were privileged to rescind the sale on the ground of fraud.

Appeal from Montgomery district court; Joseph W. Holdren, judge. Opinion filed May 10, 1924. Affirmed.

*S. H. Piper, W. B. Grant*, both of Independence, and *Hal R. Clark*, of Los Angeles, Cal., for the appellant.

*C. J. Bryant*, of Independence, and *Charles D. Welch*, of Coffeyville, for the appellees.

The opinion of the court was delivered by

Burch, J.: The action was one by a seller, to recover a portion of the price of a stock of drugs and druggists' sundries. The buyers had rescinded the sale on the ground of fraud. They recovered the portion of the price paid before rescission, and plaintiff appeals.

Several fraudulent representations which induced defendants to purchase were pleaded and fully proved. It would serve no useful purpose to review the evidence. Assertions in plaintiff's brief of failure of proof of material misrepresentation are not sustained by the record, which discloses substantial evidence establishing every fact necessary to sustain the judgment.

Defendants paid $7,750, and took possession of the goods on November 11, 1921. By virtue of circumstances which need not be stated, the remainder of the price, $7,750, became technically due about November 25, and was payable at all events within thirty days from November 10. On December 7 defendants rescinded. The goods constituted the stock of a pharmacy conducted under the trade name, "The Sunflower Pharmacy." For obvious reasons, defendants desired to continue business under that name. Plaintiff represented that the pharmacy was free of indebtedness. He said he did not owe a dime, and the bill of sale given defendants contained the following warranty:

"I hereby warrant said store and business to be free and clear of any and all encumbrance and indebtedness."

Soon after taking possession, defendants ordered goods from wholesale dealers who had been supplying the pharmacy. The wholesale dealers refused to fill the orders, because bills for previous orders were unpaid. Defendants instituted an investigation, and discovered the pharmacy's credit was bad, and it owed nearly a hundred creditors amounts aggregating a large sum, perhaps as much as $10,000. At the trial, plaintiff admitted he owed $7,500. Plaintiff made the sale without any regard for the bulk sales law, and the sale was void as to creditors. Both defendants testified they would not have purchased but for the representation that the pharmacy was free from debt, and one or both testified they relied on the warranty to protect them in case of loss. By objection to introduction of testimony, by motion to strike out testimony, by request for instructions to the jury, and by objection to instructions given the jury, plaintiff presented the proposition that the repre-

sentation could not be made ground of rescission because of the warranty, and consequently that defendants were obliged to rely on the warranty.

In this state breach of warranty, without fraud, is ground for rescission of an executed contract of sale: (*Craver v. Hornburg,* 26 Kan. 94; *Weybrich & Co. v. Harris,* 31 Kan. 92, 1 Pac. 271; *Cookingham v. Dusa,* 41 Kan. 229, 21 Pac. 95; *Manufacturing Co. v. Stark,* 45 Kan. 606, 26 Pac. 8.)

In the Cookingham case the court said:

"It is a general proposition that, on a sale of a personal chattel with a warranty, in case the chattel turns out to be not of the kind or quality represented, the purchaser may have one of the two remedies. He may rescind the contract and return the property. The effect of such action is to place the parties in the same condition in which they were before the purchase; and whatever has been paid or delivered by either is to be returned, and it or its value may be recovered in an action therefor. This is one remedy. The other is, that the purchaser may affirm the contract, retain the property, and recover damages from the vendor for the breach of his warranty." (p. 230.)

This is the law in many states (Williston on Sales, § 608, p. 1011, note 90), and under the uniform sales act (§ 69).

Fraud vitiates whatever it touches and, if a buyer has been induced to purchase, with warranty, by means of false representations, he may rescind the entire transaction, acceptance of warranty and all, because of the fraud. The matter was tersely put by the Connecticut court, which does not approve rescission for mere breach of warranty:

"The right to rescind a contract of sale in case of fraud always exists, and yet there may have been a warranty of the thing sold. The two remedies can coexist, and the purchaser has his option between them." (*Shupe v. Collender,* 56 Conn. 489, 492.)

Even in *Street v. Blay,* 2 B. & Ad. 456, which established the English doctrine that a buyer taking a warranty may not, by his own act, revest title in the seller, but must sue on the warranty, the following exceptions were noted:

"Unless there has been a condition in the contract authorizing the return, or the vendor has received back the chattel, and has thereby consented to rescind the contract, or has been guilty of a fraud, which destroys the contract altogether." (p. 462.)

In the case of *Foote v. Wilson,* 104 Kan. 191, 178 Pac. 430, the seller of a stock of goods falsely represented the goods were salable, and would invoice a certain sum. The buyer took a bill of sale

which did not contain a warranty covering the subject of the rep-
resentation, and it was contended failure to exact a warranty pre-
cluded rescission. The court said:

"Under certain circumstances, the distinction between representation and
warranty may well be regarded, but in the transaction under consideration it
is of no practical consequence. It affects neither the buyer's right nor the
buyer's remedy. Whatever else entered into the transaction, a vital part of
it was an affirmation by the seller of material facts which tended to induce
the sale, and which were relied on by the buyer. When a sale has been ac-
complished by such means, it is purely formal and theoretical to say that the
affirmation did not become an element of the contract of sale itself, and so
constitute a warranty. Such an affirmation is a warranty, . . ." (p. 195.)

The result is that, when a false affirmation which induces a sale
is carried into the bill of sale in the form of a warranty, reliance on
the affirmation, both as representation and as warranty, is, for all
purposes of rescission, reliance on the same thing; and in working
out rescission, it makes no practical difference whether the buyer
declare on falsity of the affirmation or breach of warranty.

The representation complained of was material, and defendants
were injured by its falsity, because of the vexatious liability to
creditors of the pharmacy, to which they were subjected. Defend-
ants were immediately liable to plaintiff for the remainder of the
price, damages for breach of warranty were not immediately ascer-
tainable, and defendants' only certain protection lay in rescission.
There is no real dispute that defendants rescinded with due prompt-
ness, and were able, through an accurate accounting of purchases
and sales, to restore plaintiff's pharmacy to him.

There is nothing else in the case of sufficient importance to re-
quire discussion, and the judgment of the district court is affirmed.